1   SCOTT N. SCHOOLS (SC 9990)
    United States Attorney
2   JOANN M. SWANSON (CSBN 88143)
    Chief, Civil Division
3   MELANIE L. PROCTOR (CSBN 228971)
    Melanie.Proctor@usdoj.gov
4   Assistant United States Attorney

5       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
6       Telephone: (415) 436-6730
        FAX: (415) 436-6748
7
    Attorneys for Defendants
8
                        UNITED STATES DISTRICT COURT
9
                     NORTHERN DISTRICT OF CALIFORNIA
10
                          SAN FRANCISCO DIVISION
11

| | | |
|---|---|---|
| PING JIANG, | ) | No. C 07-3909 CRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANTS' CROSS MOTION FOR |
| v. | ) | SUMMARY JUDGMENT AND |
| | ) | OPPOSITION TO PLAINTIFF'S MOTION |
| MICHAEL CHERTOFF, Secretary, | ) | FOR SUMMARY JUDGMENT |
| Department of Homeland Security; | ) | |
| ROBERT S. MUELLER, Director of the | ) | Date:   November 30, 2007 |
| Federal Bureau of Investigation, | ) | Time:  10:00 a.m. |
| | ) | |
| Defendants. | ) | |

## I.  NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on November 30, 2007, at 10:00 a.m., or as soon thereafter

as counsel may be heard, before the Honorable Charles R. Breyer, Courtroom 8, 19th Floor, 450

Golden Gate Avenue, San Francisco, California, 94102, Defendants Michael Chertoff, et al., by their

attorneys, Scott N. Schools, United States Attorney for the Northern District of California, and

Melanie L. Proctor, Assistant U.S. Attorney, will move this Court for an order granting summary

judgment in Defendants' favor.  Defendants' Motion is based on this notice, the points and

authorities in support of this motion, the declarations of F. Gerard Heinauer and Michael Cannon,

the pleadings on file in this matter, and on such oral argument as the Court may permit.

///

DEFENDANTS' MOTION
No. C 07-3909 CRB

## II.   INTRODUCTION

Plaintiff Ping Jiang ("Plaintiff") asks this Court to issue a writ of mandamus, compelling Defendants reach a decision on his application for adjustment of status.  He also asks the Court to find that Defendants have violated the Administrative Procedure Act ("APA"), and to grant relief under the Declaratory Judgment Act.  Plaintiff's application remains pending because his name check is not yet complete.  The facts are undisputed, and Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants respectfully ask this Court to grant their motion for summary judgment.

## III.   BACKGROUND

On November 23, 2004, Plaintiff filed an I-485 application for adjustment of status with the U.S. Citizenship and Immigration Services ("USCIS") California Service Center; due to reallocation of workloads, his application was transferred to the Nebraska Service Center.  See Declaration of F. Gerard Heinauer, pp. 1-2 ¶ 3 (attached as Exh. A).  Plaintiff's application is based on an application for permanent employment certification for a second preference professional worker position filed with the U.S. Department of Labor by Oracle Corporation.  Id., p. 2 ¶ 4.  Plaintiff's application is ready to be adjudicated except for Plaintiff's pending background and security check Id., p. 4 ¶ 8.   On October 10, 2007, USCIS initiated an expedited name check request with the Federal Bureau of Investigation ("FBI").  Id., p. 11 ¶ 24.

## IV.   GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

A.   LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A fact is material if the fact may affect the outcome of the case.  See id. at 248.  The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all

1  inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732,

2  735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and

3  dispose of factually unsupported claims. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).

4           B.     ADJUSTMENT OF STATUS

5           Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes

6  the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent

7  residence status certain aliens who have been admitted into the United States. Adjustment of status

8  is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

9           The status of an alien who was inspected and admitted or paroled into the United
           States . . . may be adjusted by the [Secretary], in his discretion and under such
10          regulations as he may prescribe, to that of an alien lawfully admitted for permanent
           residence[.]

11

12  8 U.S.C. 1255(a) (emphasis added). An applicant for adjustment of status must meet three

13  requirements: he must apply for such status, be eligible to receive an immigrant visa, and the visa

14  must be immediately available to him at the time he applies. Id. Significantly, the statute does not

15  set forth any time frame in which a determination must be made on an application to adjust status.

16  In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set

17  forth a time frame for adjudication, and allow discretion in how to conduct the adjudication. See

18  8 C.F.R. § 245 et seq.

19          Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and

20  Immigration Services ("USCIS") conducts several forms of security and background checks to

21  ensure that the alien is eligible for the benefit sought and that she is not a risk to national security

22  or public safety. See Exh. A, p. 4-5 ¶ 10. USCIS also conducts investigations into the bona fides

23  of petitions and applications that have been filed, in order to maintain the integrity of the application

24  process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a)

25

26

27          [1]On March 1, 2003, the Department of Homeland Security and its United States Citizenship
   and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b).
   Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary
28  of Homeland Security. 6 U.S.C. § 551(d).

1    (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation

2    [("FBI")] and the Central Intelligence Agency and with other internal security officers of the

3    Government for the purpose of obtaining and exchanging information for use in enforcing the

4    provisions of this chapter in the interest of the internal and border security of the United States").

5    These checks currently include extensive checks of various law enforcement databases, including

6    the FBI. See Exh. A, pp. 4-5 ¶ 10; see also Declaration of Michael Cannon (attached as Exh. B).

7        The FBI's name check process is quite complex.  See Eldeeb v. Chertoff, et al., No. 07-cv-

8    236-T, 2007 WL 2209231, at *4 (M.D. Fla. July 30, 2007).  Name checks are performed at the

9    request of a variety of organizations, including the federal judiciary, friendly foreign police and

10   intelligence agencies, and state and local governments.  Id. at *3. When the FBI conducts a name

11   check, the name is checked against the FBI's Universal Index, in a four-stage process.  Id. at *3.

12   Generally, the FBI employs a first-in, first-served protocol. Id. at *4.  However, when an applicant's

13   name check requires a review of numerous FBI records and files, the name check may require

14   additional time until all responsive records are located and reviewed.  Id.  USCIS determines which

15   name checks are to be expedited.  An expedited name check proceeds to the front of the queue, in

16   front of others awaiting processing.  Eldeeb, 2007 WL 2209231, at *5.

17       The FBI processed more than 3.4 million name checks during fiscal year 2006.  Id. at *3.

18   The FBI is working as expeditiously as possible to reduce the small percentage of immigration name

19   checks for which a backlog exists.  This backlog results from the vast number of requests the FBI

20   receives from USCIS and other customers, as well as the requirement for enhanced security

21   measures existing since September 11, 2001.  Id. at *5. A variety of factors play into processing

22   times, including "hits," common names, and expedited name checks.  Id. at *4.

23       C.    RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT
              AND THE MANDAMUS ACT
24

25       Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where

26   "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Agency action,

27   as defined under the APA, also includes "a failure to act."  5 U.S.C. § 551(13).  Under 5 U.S.C.

28   § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed."  The

1    elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in

2    carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of

3    prejudice to one of the parties. <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55 (2004);

4    <u>Rockbridge v. Lincoln</u>, 449 F.2d 567, 569-73 (9th Cir. 1971).

5        The APA does not provide an independent jurisdictional basis. <u>Califano v. Sanders</u>, 430

6    U.S. 99, 107 (1977); <u>Staacke v. U.S. Department of Labor</u>, 841 F.2d 278, 282 (9th Cir. 1988).

7    Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise

8    established. <u>Staacke</u>, 841 F.2d at 282.  Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201

9    ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range

10   of remedies available in federal courts. <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671-

11   72 (1950).

12       Mandamus is an extraordinary remedy.  <u>See</u> <u>Cheney v. United States District Court for</u>

13   <u>the District of Columbia</u>, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); <u>Allied Chemical</u>

14   <u>Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 34 (1980).  The United States Supreme Court has stated that

15   "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the

16   defendant owes him a clear nondiscretionary duty." <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984);

17   <u>see also</u> <u>Kildare v. Saenz</u>,  325 F.3d 1078,  1084 (9th Cir. 2003).

### V.  ANALYSIS

#### A.    <u>DEFENDANT MUELLER SHOULD BE DISMISSED</u>

20       Courts in this district have recognized that since March 1, 2003, the Department of

21   Homeland Security has been the agency responsible for implementing the Immigration and

22   Nationality Act. <u>See</u> 6 U.S.C. §§ 271(b)(5), 557; <u>Clayton v. Chertoff, et al.</u>, No. 07-cv-02781-CW,

23   slip. op., at 4-7 (N.D. Cal. Oct. 1, 2007);  <u>Konchitsky v. Chertoff</u>, No. C-07-00294 RMW, 2007 WL

24   2070325, at *6 (N.D. Cal. July 13, 2007); <u>Dmitriev v. Chertoff</u>, No. C 06-7677 JW, 2007 WL

25   1319533, at *4 (N.D. Cal. May 4, 2007).   Accordingly, the only relevant Defendant here is

26   Defendant Chertoff, and Defendant Robert S. Mueller, as Director of the Federal Bureau of

27   Investigation, should be dismissed.  <u>See Liang v. Attorney General of the United States</u>, No. 07-cv-

28   02349 CW, slip. op., at 6-7 ("the APA does not confer jurisdiction over the FBI in connection with

1    an action for judicial review of the USCIS's failure to act on an adjustment of status application")

2    (N.D. Cal. Oct. 30, 2007).

3    If the FBI owes any duty at all, it is a duty owed to DHS, not Plaintiff. Defendants

4    respectfully ask the Court to join the vast majority of courts across the nation, and recognize that the

5    FBI is not properly named. See, e.g., Eldeeb, 2007 WL 2209231, at *21 (dismissing the FBI, stating

6    that the duty owed by the FBI is to USCIS, not the plaintiff); Yan v. Mueller, No. H-07-0313, 2007

7    WL 1521732, at *6 (May 24, 2007) ("The evidence shows that the delay is due, not only to the

8    volume of requests that the FBI receives, but also to the FBI's exercise of discretion in determining

9    the timing for conducting the many name check requests that it receives and the manner in which

10   to conduct those checks." (emphasis added)); Li v. Chertoff, et al., 482 F. Supp. 2d 1172, 1179 (S.D.

11   Cal. 2007) ("Additionally, Plaintiff has not pointed to any statute or regulation requiring the FBI to

12   complete her name check in any period of time, reasonable or not."); Sozanski v. Chertoff, et al.,

13   No. 06-cv-0993, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district

14   courts lack jurisdiction to compel the FBI to perform name checks in adjustment of status cases).

15   B.    THE COURT LACKS JURISDICTION TO COMPEL PROCESSING WITHIN A
            CERTAIN TIME FRAME

16

17   For the record, Defendants argue that the Court lacks jurisdiction to compel processing of

18   Plaintiff's application with a certain time frame. District courts that have concluded that the

19   Mandamus Act vests the courts with subject matter jurisdiction have too firmly rested their analysis

20   upon an inapplicable provision in 8 C.F.R. § 245.2(a)(5)(i). See, e.g., Yu v. Chertoff, No. C06-7878

21   CW, 2007 WL 1742850, at *2 (N.D. Cal. June 14, 2007) (finding that 8 C.F.R. § 245.2(a)(5)

22   requires a decision); Quan v. Chertoff, No. C06-7881 SC, 2007 WL 1655601, at *3 (N.D. Cal. June

23   7, 2007) (same); Fu v. Gonzales, No. C07-0207 EDL, 2007 WL 1742376, at *3 n.2 (N.D. Cal. May

24   22, 2007) (same). The non-discretionary nature of § 245.2's notice requirement does not extend to

25   the pre-adjudication processing of which Plaintiff here complains, a process that is statutorily

26   defined as discretionary. 8 U.S.C. § 1252(a)(2)(B). The pre-adjudication investigation and

27   processing are also discretionary beyond the language of the controlling statute.

28   The background investigation is discretionary as a matter of common sense. The agencies

1    must be able to make determinations in how to proceed with an investigation on a case-by-case

2    basis, once enlightened by the information received at points along the investigative process. See

3    e.g., 8 C.F.R.§ 245.6 (an "interview may be waived . . . when it is determined by the Service that

4    an interview is unnecessary"); id. at § 103.2(b)(7) ("[The Service] may direct any necessary

5    investigation") (emphasis added); id. at § 103.2(b)(18) ("A district director may authorize

6    withholding adjudication"). The use of "may," in regulations that are more specifically addressed

7    to the processing of adjustment applications than § 245.2's provision for final adjudication and the

8    notice of such final agency determination, provides discretion to the manner of the processing of

9    applications beyond that expressed in 8 U.S.C. § 1252(a)(2)(B). Thus, the process of adjudication

10   is completely discretionary. See Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 690 (9th

11   Cir. 2003). Accordingly, the Court lacks jurisdiction to compel USCIS to render a decision on

12   Plaintiff's application.

13        Furthermore, mandamus is reserved for those situations in which the plaintiff's claim is clear

14   and certain. Kildare, 325 F.3d at 1078. Here, as explained below, because Plaintiff has failed to

15   establish that action on his application has been unreasonably delayed, he has failed to show that his

16   claim is so clear and certain that mandamus is justified. Furthermore, USCIS has exercised its

17   discretion in determining which name checks should be expedited. See Exh. C. Plaintiff's case

18   meets none of these criteria.

19        C.    THE DELAY IS REASONABLE

20        To determine whether a delay is egregious, such that relief under the APA is warranted,

21   several circuits have adopted the six-part test first articulated in Telecomm. Research and Action

22   Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"). The six considerations outlined in TRAC

23   are:

24        (1) the time agencies take to make decisions must be governed by a rule of reason;
          (2) where Congress has provided a timetable or other indication of the speed with
25        which it expects the agency to proceed in the enabling statute, that statutory scheme
          may supply content for this rule of reason;
26        (3) delays that might be reasonable in the sphere of economic regulations are less
          tolerable when human health and welfare are at stake;
27        (4) the court should consider the effect of expediting delayed action on agency
          activities of a higher or competing priority;
28        (5) the court should also take into account the nature and extent of the interests

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

prejudiced by delay;
(6) the court need not find any impropriety lurking behind agency lassitude in order
to hold that agency action is unreasonably delayed.

750 F.2d at 80.

The court in <u>Sze v. INS</u>, No. C-97-0569-SC, 1997 WL 446236, at *8 (N.D. Cal.
Jul. 24, 1997), which applied the <u>TRAC</u> test to a similar complained-of delay in the immigration
context, found the fourth factor to be the most persuasive. <u>Id.</u> at *8. The court, in refusing to grant
relief under the APA, held that "the reasonableness of administrative delays must be judged in light
of the resources available to the agency." <u>Id.</u> The court also recognized that by granting relief, it
"would, at best, reorder the queue of applications, thereby leading to little net benefit." <u>Id.</u>; <u>see also</u>
<u>Liberty Fund, Inc. v. Chao</u>, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (Department of Labor's
decision on how to handle competing applications for permanent labor certifications – on a first in,
first out processing – "is deserving of deference" because any grant of relief to petitioners would
result in "no net gain" – petitioners would move to the front of the queue, at the expense of other
similarly situated applicants.).

Here, granting Plaintiff's request for the court to compel the FBI to more expeditiously
resolve his name check comes at the expense of other similarly-situated applicants. Furthermore,
the court found that the agency, rather than the court was in a "unique–and authoritative–position
to view its projects as a whole, estimate the prospects for each, and allocate its resources in the
optimal way." <u>Id.</u> (quoting <u>In re Barr Labs., Inc.</u>, 930 F.2d 72, 76 (D.C. Cir. 1991)). Plaintiff
mistakenly relies on the processing times posted on the USCIS website as evidence that his case has
been unreasonably delayed. Those times refer to applications with routine name checks, and do not
apply to the case at hand.

Congress has declined to set a time frame upon processing adjustment of status name checks,
the cause of the delay in the case at hand. <u>Contra</u> Intelligence Reform and Terrorism Prevention Act
of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel
security checks to be completed within a certain timeframe). Requiring the FBI to divert resources
to complete Plaintiff's name check by an arbitrary deadline or before other immigration applicants'

DEFENDANTS' MOTION
No. C 07-3909 CRB                    8

1   would detract from the FBI's efforts to reduce waiting times for all applicants.  Moreover, it would

2   be unfair to applicants who have been waiting longer than Plaintiff.  Even in cases involving

3   statutory deadlines, which do not apply here, courts have declined to grant such relief.  See, e.g., In

4   re Barr Labs., Inc., 930 F.2d at 75; Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d

5   1094, 1101 (D.C. Cir. 2003).  Moreover, as discussed in Liberty Fund, "where resource allocation

6   is the source of the delay, courts have declined to expedite action because of the impact on

7   competing priorities." Liberty Fund, 394 F. Supp. 2d at 117.

8       The other TRAC factors also disfavor granting the requested relief.  See Mahdavi v.

9   Chertoff, No. 06cv2716 DMS, slip op., at 4-6 (Oct. 29, 2007) (concluding delay of over two years

10  was not unreasonable and granting summary judgment in defendants' favor) (attached as Exh. D).

11  As explained above, Congress has imposed no deadline on the name check process.  The nature and

12  extent of the interests at stake here also weigh heavily in favor of denying the request for a

13  premature decision on this application.  Plaintiff's interest in an expedited decision is minimal and

14  does not implicate human health and welfare.  Plaintiff remains free to work[2] and travel within the

15  United States.  On the other hand, the FBI has an important national security interest in ensuring a

16  thorough and accurate result for his background check.  Defendant USCIS cannot render a decision

17  on Plaintiff's application in the absence of a complete background investigation.

18                              **VI.  CONCLUSION**

19      For the foregoing reasons, the Government respectfully asks the Court to dismiss Defendant

20  Mueller, and grant the remaining Defendants' motion for summary judgment as a matter of law.

21  Dated: November 2, 2007                        Respectfully submitted,

22                                                 SCOTT N. SCHOOLS
                                                   United States Attorney
23

24                                                        /S/
25                                                 MELANIE L. PROCTOR
                                                   Assistant United States Attorney
26                                                 Attorneys for Defendants

27

28      [2]Plaintiff incorrectly alleges that he cannot change his employer.  Complaint, p. 3 ¶ 11.  In
    fact, he is free to do so.  Exh. A, p. 3 ¶ 6.

DEFENDANTS' MOTION
No. C 07-3909 CRB                    9