# EXHIBIT C

*Office of Communications*
**U.S. Department of Homeland Security**



February 20, 2007

# USCIS Update

**USCIS CLARIFIES CRITERIA TO EXPEDITE FBI NAME CHECK**
*Federal Litigation Removed as Sole Basis to Expedite Check*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

USCIS may continue to request an expedited FBI name check if the case meets one of the other approved criteria, including:

1. Military deployment,
2. Age-out cases not covered under the *Child Status Protection Act*, and applications affected by sunset provisions such as diversity visas,
3. Significant and compelling reasons, such as critical medical conditions, and
4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

The FBI name check is an invaluable part of the security screening process, ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens. USCIS also requests an FBI name check to screen out people who seek immigration benefits improperly or fraudulently and ensure that only eligible applicants receive benefits.

Information about the FBI name check is available on the USCIS website at http://www.uscis.gov or by calling the USCIS National Customer Service Center toll free at 1-800-375-5283.

–USCIS –

On March 1, 2003, U.S Citizenship and Immigration Services became one of three legacy INS components to join the U.S. Department of Homeland Security.   USCIS is charged with fundamentally transforming and improving the delivery of immigration and citizenship services,  while enhancing our nation's security.

www.uscis.gov

# EXHIBIT D

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| SHAHRAM MAHDAVI, | CASE NO. 06cv2716 DMS (NLS) |
|---|---|
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| MICHAEL CHERTOFF, SECRETARY, et al., | [Docket Nos. 17, 21] |
| Defendants. | |

This case comes before the Court on cross-motions for summary judgment. Plaintiff filed his motion on August 16, 2007, Defendants filed their opposition on September 7, 2007, and Plaintiff filed his reply on September 14, 2007. Thereafter, on September 21, 2007, Defendants filed their own motion for summary judgement. Plaintiff filed his opposition to the motion on October 3, 2007, and Defendants filed their reply on October 19, 2007. After thoroughly reviewing the parties' briefs, the Court finds this matter suitable for judgment without oral argument. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendants' motion.

**I.**

**FACTUAL BACKGROUND**

On September 8, 2005, Plaintiff, a citizen of Iran, submitted an application for adjustment of status ("Form I-485") to the California Service Center ("CSC") of the Department of Homeland Security ("DHS") Citizenship and Immigration Services Division ("USCIS"). (Mem. of P & A in

Supp. of Defs' Mot. for Summ. J., Ex. A at 1.) The purpose of this application is to obtain lawful permanent resident status for Plaintiff. (*Id.* at 2.) Plaintiff's application has since been transferred to the Nebraska Service Center in Lincoln, Nebraska, where it remains pending completion of certain background and security checks. (*Id.* at 1-2.) Among the processes that must be completed are records checks against DHS's own immigration systems, fingerprint checks performed by the Federal Bureau of Investigation ("FBI"), checks against the DHS-managed Interagency Border Inspection System ("IBIS"), and a name check conducted by the FBI. (*Id.* at 3-4.) The purpose of these screening processes is to ensure that applicants do not pose a threat to national security or public safety. (*Id.* at 4-5.) In certain cases, these background checks have revealed important information that the traditional DHS measures cannot. (*Id.* at 5.) Plaintiff has been fingerprinted twice, and his preliminary IBIS check is complete. (*Id.* at 5-6.) His name check request was received by the FBI on September 16, 2005, but remains pending. (*Id.* at 6.) The status of his DHS records check is unknown. Although there is a procedure for expediting processing of certain applications, Plaintiff has not applied for that procedure (*Id.* at 7-9.)

## II.

## DISCUSSION

Plaintiff moves for summary judgment on the ground that Defendants' delay in processing his application is unreasonable. Defendants deny they are delaying adjudication of Plaintiff's application, and assert that even if there is some delay, it is not unreasonable.

### A. Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rely solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Relief in the Nature of Mandamus

"[T]he writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988). However, while operating under this guideline, courts must follow the mandate of the Administrative Procedure Act ("APA") and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (2000). When determining the validity of APA relief, the Ninth Circuit evaluates the so-called "*TRAC*" factors found in *Telecomm. Research & Action Ctr. v. Fed. Commc'n Comm'n*, 750 F.2d 70, 79-80 (D.C. Cir. 1984). *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997); *Ibrahim v. Chertoff*, No. 06cv2071-L, 2007 WL 1558521, at *6 (S.D. Cal. May 27, 2007); *see also Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001). The *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason'[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

*TRAC*, 750 F.2d at 80 (internal citations omitted). Plaintiff has failed to address these factors in both his own motion and his opposition to Defendants' motion. However, Defendants assert they control resolution of this case, and warrant summary judgment in their favor.

/ / /

### 1. Governed by a rule of reason

While Defendants have explained their process for evaluating I-485 Forms, they do not identify a precise time limit for adjudication. Instead, they simply guarantee that "no eligible alien [will] wait longer than is reasonably necessary to receive a decision." (Mem. of P & A in Supp. of Ds' Motion for Summ. J., Ex. A at 6.) Although ambiguous, this time frame is indeed governed by a rule of reason: the uncertain duration of the integral background checks. "The government's interests in the administration of its immigration laws. . .are. . .considerable," and Defendants have proffered compelling information related to national security, public safety, and the thorough screening of applicants for adjustment of status. *Walters v. Reno*, 145 F.3d 1032, 1043 (9th Cir. 1998); (Mem. of P & A in Supp. of Defs' Mot. for Summ. J., Ex. A at 4-6.) As a result of the necessity for thorough checks - combined with the fact that "some cases legitimately take months or even several years to resolve" - Defendants' unwillingness to impose an upper time limit on processing adjustment applications is reasonable. (Mem. of P & A in Supp. of Defs' Mot. for Summ. J., Ex. A at 12-13.) Furthermore, Defendants are processing outstanding background checks as quickly as possible, and are seeking means of improving and quickening their systems. (*Id.* at 6.) Thus, the open-ended processing time frame is a reasonable rule, so long as Defendants continue to complete the necessary background checks as rapidly and efficiently as their resources allow.

### 2. Congressional provision of timetable

This factor is inapplicable because "Congress has not imposed a timetable for application processing." *Ibrahim*, 2007 WL 1558521 at *7.

### 3. Delays affecting health and human welfare

The context for this factor is grounded in *Blankenship v. Sec'y of HEW*, 587 F.2d 329, 334 (6th Cir. 1978). In this case, most individuals pursuing relief were "destitute and seek[ing] benefits for the necessities of life." *Id.* The court found this condition compelling because of the substantial burden upon basic health and human welfare that further delays could cause.

In this case, Plaintiff has not presented any information indicating that delays in the processing of his application negatively affect his health. Plaintiff has stated that in order to work in the United States as an alien and travel abroad, he must annually spend $665 for the appropriate permits. (P's

Mem. of P & A. in Opp'n. to Ds' Mot. for Summ. J., at 5.)  Presumably, this charge would not apply if Plaintiff received permanent resident status.  Thus, the delay in adjudicating Plaintiff's I-485 - the approval of which is not even guaranteed - could conceivably be affecting his finances by $665 per year.  However, Plaintiff has given no indication that he is either destitute or seeking life's necessities, or that paying $665 annually would place him in such a position.  Given the contextual background of this *TRAC* factor, the Court finds Plaintiff's health and human welfare has not been impaired by the delay.

### 4. Effect of expediting on agency activities

Plaintiff has not addressed this issue.  Defendants emphasize that "whenever a particular application. . .receives expedited processing and is moved up in the adjudications queue, it is at the expense of those still unadjudicated. . .applications that bear an earlier filing date." (Mem. of P & A in Supp. of Ds' Mot. for Summ. J., Ex. A at 8-9.)  Further, the FBI background check system is experiencing a backlog of these expedited requests, thus limiting the number of expedited checks that can be processed on a weekly basis.  (*Id.* at 9.)  In this case, the effect of expediting Plaintiff's Form I-485 is fairly obvious: assuming FBI resources remain constant, no procedural net gain will result and other applications "of a higher or competing priority" will be delayed.  *TRAC*, 750 F.2d at 80.  As a result, this factor weighs in favor of Defendants.

### 5. Nature and extent of interests prejudiced

In all of his filings with this Court, Plaintiff has devoted one sentence to a single interest prejudiced by this delay: the $665 expense required for traveling and working permits.  While this amount is not insubstantial, Plaintiff has provided no further detail as to how these payments prejudice his finances.  Instead, he offers a merely conclusory remark: "[h]e is being damaged by not having permanent residence in this country." (P's Memo. of P & A in Opp. to Ds' Mot. for Summ. J., at 5.) As a result, this factor weighs only slightly in favor of Plaintiff.

### 6. Existence or absence of impropriety

Nothing in the record indicates the existence of any impropriety on Defendants' part. Rather, both sides seem in agreement that the only impediment to adjudication of Plaintiff's application is the pending background check.  To this end, Defendants affirm they "will continue to perform any

outstanding background and security checks as expeditiously as possible." (Mem. of P & A in Supp. of Ds' Mot. for Summ. J., Ex. A at 6.) While this lack of impropriety would not excuse an unreasonable delay, it demonstrates Defendants' good faith in operating as efficiently as possible under their budgetary and temporal constraints.

## III.

## CONCLUSION

After considering the six *TRAC* factors, the Court finds Defendants have not unreasonably delayed the processing of Plaintiff's Form I-485. Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED**.

DATED: October 29, 2007

HON. DANA M. SABRAW
United States District Judge